IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 08-CR-0061-TCK-1 ) |
| | ) USM No.: 10373-062 |
| JAMES FRANKLIN BROOKS, | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Defendant James Franklin Brooks's motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) filed October 30, 2023 (Dkt. 159). The Government filed a response in opposition to the motion on November 15, 2023 (Dkt. 161), and, with leave of Court, filed an amended response in opposition to the motion on December 5, 2023 (Dkt. 165). Brooks filed a reply to the amended response on December 12, 2023 (Dkt. 170).

Brooks seeks a reduction of his 435-month sentence, asserting that amendments to 18 U.S.C. § 924(c) made by the First Step Act of 2018 created a significant disparity between the mandatory sentence he received for his second § 924(c) conviction and the maximum sentence he would face if sentenced today for that same conviction; that he was relatively young when he committed the offense conduct; that a reduction of his unusually long sentence would be consistent with the United States Sentencing Commission's recent amendment to USSG § 1B1.13(b);[1] and that consideration of applicable factors under 18 U.S.C. § 3553(a) support his request for a reduced sentence. Dkt. 159. The Government urges the Court to deny the motion, arguing that Brooks does not present any extraordinary and compelling reasons warranting relief; that the Sentencing

---

[1] The Sentencing Commission amended USSG § 1B1.13, effective November 1, 2023, through Amendment 814. USSG Supplement to App. C (Nov. 1, 2023), at 200-210.

Commission's recent amendment to USSG § 1B1.13(b) is invalid; and that Brooks's history of serious disciplinary infractions and high risk of recidivism weigh strongly against his request for a reduced sentence. Dkt. 165.

## I. Background

Nearly sixteen years ago, on February 22, 2008, Brooks and Walter McCombs robbed two Tulsa County convenience stores at gunpoint. Dkt. 159, at 5-7; PSR, at 6, ¶¶ 8-11. Brooks obtained a gun from his closet and gave the gun to McCombs before the robberies, Brooks drove his truck to both locations to commit the robberies, McCombs brandished the gun during the robberies, and both men demanded money from the convenience store clerks during the robberies. Dkt. 159, at 1-3; Dkt. 94, Tr. Trial vol. 1, at 8-12, 18-19, 22, 61-71, 73-76, 80, 88-92, 100-01; Dkt. 95, Tr. Trial vol. 2, at 219-24.[2] While one clerk suffered emotional trauma, there were no physical injuries during the robberies, the gun was not discharged, and the robberies resulted in a net cash amount of just under $600 and a lottery ticket. PSR, at ¶¶ 8-9, 13.

Both men were charged with two counts of Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951 and 2 (counts one and two), and two counts of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (counts three and four). Dkt. 2. Brooks alone was also charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (count five). *Id.*

Brooks's case proceeded to a jury trial, McCombs testified as a witness for the Government, and the jury found Brooks guilty as to all five counts, in part under a theory of aiding

---

[2] Brooks's Presentence Investigation Report indicates that Brooks brandished the gun during both robberies. *See* PSR, at 6, ¶¶ 8-11. But, as Brooks contends, the evidence presented at trial shows, and the prosecutor's closing argument supports, that Brooks supplied the gun to McCombs and that McCombs brandished the gun during both robberies.

2

and abetting.³ Dkt. 52; Dkt. 58, at 29.  This Court sentenced Brooks to a total term of imprisonment of 435 months: fifty-one months each as to counts one, two, and five, to be served concurrently with each other; eighty-four months as to count three and 300 months as to count four, to be served consecutively to each other and consecutively to the terms imposed as to counts one, two, and five. Dkt. 82.  In determining the applicable sentencing range as to counts one, two, and five, the Court assessed four criminal history points under USSG § 4A1.1(c) based on Brooks's prior criminal convictions and added two criminal history points under USSG § 4A1.1(d) because Brooks committed the offense conduct while under a criminal justice sentence, resulting in six criminal history points, a Criminal History Category of III, and a guideline sentencing range of fifty-one to sixty-three months' imprisonment as to each count.  PSR at ¶¶ 48-57, 74.⁴  The Court determined that 18 U.S.C. § 924(c) required statutory mandatory minimum sentences of no less than eighty-four months as to count three and no less than 300 months' imprisonment as to count four, both of which were statutorily required to be served consecutively to any other term of imprisonment. *Id.* at ¶ 74.

The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") affirmed Brooks's convictions and sentences on direct appeal. *United States v. Brooks*, 569 F.3d 1284 (10th

---

³ McCombs pleaded guilty as to counts three and four before the jury trial, the Government dismissed counts one and two at sentencing, and this Court sentenced McCombs to a total term of imprisonment of 210 months:  eighty-four months as to count three and 126 months as to count four, to be served consecutively.  Dkts. 42, 83; *see* 18 U.S.C. § 3553(e) (providing courts with limited authority to impose a sentence below a statutory mandatory minimum sentence). McCombs was released from federal prison in September 2023.  Dkt. 159, at 5; *see also* Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc, last visited Feb. 9, 2024.

⁴ Brooks's prior convictions that resulted in four criminal history points included (1) a misdemeanor conviction for possessing drug paraphernalia (a marijuana pipe) at age eighteen; (2) a misdemeanor conviction for possessing marijuana at age eighteen; (3) a misdemeanor conviction for possessing marijuana at age twenty-one; and (4) felony convictions for burglary of an automobile and attempted larceny of an automobile at age twenty-one.  PSR, at ¶¶ 49-50, 53-54.

Cir. 2009). Brooks twice moved to vacate, set aside, or correct his sentence, under 28 U.S.C. § 2255; this Court denied the first motion in 2013 and dismissed the second motion in 2020. Dkts. 119, 143; *see also United States v. Brooks*, No. 20-5115, 2023 WL 1814705 (10th Cir. Feb. 8, 2023) (unpublished) (affirming dismissal of Brooks's second § 2255 motion).

On April 1, 2021, Brooks submitted a letter to the warden of FCI Thomson, asking the Bureau of Prisons to file a motion for reduction of sentence on his behalf. Dkt. 159, at 6; Dkt. 159-1. The warden did not respond to the letter or file a motion. Dkt. 159, at 6. Brooks filed the instant motion on October 30, 2023. *Id.* at 1. The Government's initial response, filed November 15, 2023, did not address the impact, if any, of the recent amendment to USSG § 1B1.13. Dkts. 161, 163. With leave of Court, the Government filed an amended response discussing the amended policy statement, and Brooks filed a reply brief. Dkts. 165, 170.

Brooks presently is imprisoned at FCI Pollock with a projected release date of July 12, 2042. Dkt. 165, at 2; *see also* Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc, last visited Feb 9, 2024.

## II. Applicable law

In December 2018, Congress enacted the First Step Act of 2018 ("FSA") which, in part, modified 18 U.S.C. § 3582(c)(1) to allow a defendant to bring a motion for reduction of sentence where "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Before the FSA, only the Bureau of Prisons could file a motion for reduction of sentence on behalf of a defendant. *United States v. Maumau*, 993 F.3d 821, 824 (10th Cir. 2021). As amended by the FSA, § 3582(c)(1)(A) provides:

> (c) Modification of an Imposed Term of Imprisonment. –The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—

>>(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that—
>
>>>(i) extraordinary and compelling reasons warrant such a reduction; or
>
>>>(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under § 3142(g);
>
>>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). Under § 3582(c)(1)(A)(i),

>a district court may . . . grant a motion for reduction of sentence, whether filed by the Director of the BOP or a defendant, only if three requirements are met: (1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable.

*Maumau*, 993 F.3d at 831. In *Maumau*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") concluded that "district courts . . . have the authority to determine for themselves what constitutes 'extraordinary and compelling reasons,' but that this authority is effectively circumscribed by . . . the requirement that a district court find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 834. The Tenth Circuit nonetheless held that the Sentencing Commission's applicable policy statement in USSG § 1B1.13, then last revised in November 2018, did not apply to defendant-filed motions because

5

the Sentencing Commission did not revise the policy statement after Congress enacted the FSA and in December 2018 and amended § 3582(c)(1)(A) to permit defendant-filed motions. *Id.* at 836-37. Thus, under *Maumau*, a district court's discretion to identify "extraordinary and compelling reasons" warranting a sentencing reduction was "not constrained by the Sentencing Commission's existing policy statement" in USSG § 1B1.13. *Id.* at 837.[5]

However, effective November 1, 2023, the Sentencing Commission amended USSG § 1B1.13, rendering that policy statement applicable to both BOP-filed and defendant-filed motions seeking relief under § 3582(c)(1)(A). USSG § 1B1.13 (Nov. 1, 2023); *see also* USSG Supplement to App. C (Nov. 1, 2023), at 205 (discussing Amendment 814 and stating: "Among other things, the amendment extends the applicability of the policy statement to defendant-filed motions; expands the list of specified extraordinary and compelling reasons that can warrant sentence reductions; retains the existing 'other reasons' catchall; provides specific guidance with

---

[5] When *Maumau* was decided, USSG § 1B1.13 essentially restated the language from the pre-FSA version of § 3582(c)(1)(A), referencing only BOP-filed motions, and the application note to USSG § 1B1.13 described extraordinary and compelling reasons to reduce a sentence as including the defendant's medical condition; the defendant's age, if over 65 years, and attendant deterioration caused by the aging process; certain family circumstances of the defendant; and "other reasons" as determined by the Director of the Bureau of Prisons. USSG § 1B1.13, p.s. & comment. (n.1). After *Maumau* was decided, the Tenth Circuit clarified that while *Maumau* held that "the district court's discretion is not restricted by any Sentencing Commission policy statements . . . it would hardly be an abuse of discretion for a district court to look to the [2018] policy statement for guidance." *United States v. Hald*, 8 F.4th 932, 938 n.4 (10th Cir. 2021).

regard to the permissible consideration of changes in the law; and responds to case law that developed after the enactment of the First Step Act.").

### III. Analysis

**A.   Exhaustion of administrative remedies**

The Court finds that Brooks fully exhausted administrative remedies by sending a letter to the warden of FCI-Thompson and by waiting more than thirty days after the warden's receipt of the letter to file the instant motion after the warden neither responded to the letter nor filed a motion for reduction of sentence on Brooks's behalf.  Dkt. 159-1; *see* 18 U.S.C. § 3582(c)(1)(A) (describing exhaustion requirement).

**B.   Existence of extraordinary and compelling reasons**

Brooks contends that his age at the time of the crimes (twenty-three years old), the unusual length of his sentence (435 months' imprisonment), and the extreme disparity between the mandatory sentence he received for his second § 924(c) conviction (300 months) and the sentence he likely would receive for the second § 924(c) conviction under current law (eighty-four months), collectively, are extraordinary and compelling reasons to reduce his sentence. Dkt. 159, at 11-13. The Court agrees.

When this Court sentenced Brooks, the law required this Court to impose a mandatory minimum prison sentence of 300 months, or twenty-five years, for Brooks's second § 924(c) conviction—even though the offense conduct resulting in both § 924(c) convictions consisted of the brandishing of a gun at two separate robberies that occurred within approximately one hour of each other on the same day and both convictions resulted from a single prosecution.  18 U.S.C. § 924(c)(1)(C) (2008); *Deal v. United States*, 508 U.S. 129, 132 (1993).  But "[s]ection 403(a) of the First Step Act amended § 924(c) so that the twenty-five-year mandatory minimum sentence for a second or subsequent § 924(c) conviction of § 924(c) applies only if the defendant's first

7

§ 924(c) conviction is final at the time of the second or subsequent § 924(c) conviction." *Maumau*, 993 F.3d at 824; *see also* 18 U.S.C. § 924(c)(1)(C)(i).  And, while the concurring opinion in *Maumau* suggested that "[a] long sentence derived from [§ 924(c)] stacking cannot, by itself, be an 'extraordinary and compelling' reason for sentence reduction," because Congress "chose *not* to make [section 403(a)] retroactive," that same opinion recognized that "a district court may consider the legislative change to the stacking provision . . . in the context of an individualized review of a movant's circumstances."  *Maumau*, 993 F.3d at 838 (Tymkovich, C.J., concurring); *see also United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020) ("The fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i).").

More to the point, *Maumau* affirmed a district court's "conclusion that a combination of factors warranted relief, including: [the defendant's] young age at the time of sentencing; the incredible length of his stacked mandatory sentences under § 924(c); the First Step Act's elimination of sentence-stacking under § 924(c); and the fact that [the defendant], if sentenced today . . . would not be subject to such a long term of imprisonment."  993 F.3d at 837 (alterations added; internal quotation marks omitted); *see also United States v. Curtis*, No. 01-CR-0003-TCK, 2020 WL 6484185, at *2, 9 (N.D. Okla. Nov. 4, 2020) (unpublished) (finding the existence of extraordinary and compelling reasons to reduce a defendant's sentence based on the defendant's "conviction at a relatively young age [thirty-two years old], receiving what amounted to a life sentence, the disparity between his sentence and those of his codefendants, the disparity of sentence between his sentence and those sentenced for similar crimes after the First Step Act, and his rehabilitation efforts").  As Brooks contends, the combination of factors present in this case are sufficiently like the factors presented in *Maumau* and *Curtis*:  Brooks was twenty-three years

8

old at the time of the offense conduct, he received an extraordinarily long sentence based on § 924(c) sentence-stacking, his co-defendant received a significantly shorter sentence for the same offense conduct, and he would face a significantly shorter sentence if he were sentenced today based on the FSA's amendment to § 924(c).  The Court thus finds and concludes that these factors, combined, provide extraordinary and compelling reasons to reduce Brooks's sentence.

**C.**     **Consistency with the applicable policy statement:  USSG § 1B1.13**

Brooks contends that reducing his sentence is consistent with the Sentencing Commission's recent amendment to USSG § 1B1.13(b).  Dkt. 159, at 13-14.  Specifically, subsection (b)(6) provides in full:

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSG § 1B1.13(b)(6) (Nov. 1, 2023).  Brooks argues his circumstances "easily meet" the criteria described in subsection (b)(6) because his 435-month prison sentence is unusually long, he has served more than fifteen years of his term of imprisonment, and the change in the law eliminating § 924(c) sentence-stacking produced an "extreme" disparity between the sentence he is serving for his second § 924(c) conviction (300 months) and the sentence likely to be imposed under current law (eighty-four months).  Dkt. 159, at 13-14.

The Government does not appear to dispute the existence of these circumstances.  Instead, the Government argues that Brooks cannot rely on the length of his sentence and the lower sentence he would receive if sentenced today as extraordinary and compelling reasons to reduce his sentence "because [USSG] § 1B1.13(b)(6) conflicts with § 3582(c)(1)(A)'s plain text, context, and

9

purpose" and is therefore "invalid." Dkt. 165, at 3-7. The Government's position appears to rest on two premises. First, USSG § 1B1.13(b)(6) constrains the Court's broad discretion to find that the length of a defendant's sentence is an extraordinary and compelling reason to reduce a sentence to only those cases that fall within the specific circumstances described in subsection (b)(6). *See id.* at 5 (asserting that "a reduction to [Brooks's] sentence could qualify as 'extraordinary and compelling' only under § 1B1.13(b)(6)"). Second, neither Brooks nor any other defendant can rely on subsection (b)(6) to show that an "unusually long sentence" warrants a reduced sentence because the Sentencing Commission exceeded the "broad authority" delegated to it by Congress under 28 U.S.C. § 994(t) to "describe what should be extraordinary and compelling reasons for sentence reduction" by permitting sentence reductions under subsection (b)(6) based on "nonretroactive or intervening changes in the law." *Id.* at 5-7.

Having considered the Sentencing Commission's amendment to USSG § 1B1.13(b), the Sentencing Commission's official commentary discussing the amendment, and other relevant law, the Court agrees with the Government's first premise. In adding subsection (b)(6) to its policy statement, the Sentencing Commission explained that subsection (b)(6)

> permits non-retroactive changes in law (other than non-retroactive amendments to the Guidelines Manual) to be considered extraordinary and compelling reasons warranting a sentence reduction, but only in narrowly circumscribed circumstances. Specifically, where (a) the defendant is serving an unusually long sentence; (b) the defendant has served at least ten years of the sentence; and (c) an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, the change in law can qualify as an extraordinary and compelling reason after the court has fully considered the defendant's individualized circumstances.

USSG Supplement to App. C (Nov. 1, 2023), at 208. Reading subsection (b)(6) as constraining a district court's broad discretion to determine for itself that an unusually long sentence is an extraordinary and compelling reason to reduce a sentence not only is consistent with the Sentencing Commission's official commentary to Amendment 814 but also is consistent with

10

*Maumau*'s reasoning that until the Sentencing Commission revised USSG § 1B1.13 to conform to the FSA's amendments, a district court's finding that an extraordinary and compelling reason exists to warrant a sentence reduction "was not constrained" by the Sentencing Commission's 2018 policy statement.  *Maumau*, 993 F.3d at 832, 836-37, 838.

But the Court rejects the Government's second premise—that the Sentencing Commission exceeded its authority by amending its applicable policy statement to add subsection (b)(6)—and thus rejects the Government's broader argument that USSG § 1B1.13(b)(6) is "invalid."  As the Tenth Circuit explained in *Maumau*,

> [N]either § 3582(c)(1)(A)(i), nor any other part of the statute, defines the phrase "extraordinary and compelling reasons" or indicates that the Sentencing Commission is charged with defining the phrase.  That said, Congress has, in a different statute, directed the Sentencing Commission, as part of its statutory duties, to promulgate "general policy statements" regarding the appropriate use of the sentence modification provisions set forth in § 3582(c). 28 U.S.C. § 994(a)(2)(C).  Congress has also directed the Sentencing Commission, in promulgating those general policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).  "Rehabilitation of the defendant alone," Congress has stated, "shall not be considered an extraordinary and compelling reason."  *Id.*

*Maumau*, 993 F.3d at 832.  As Brooks argues, when "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.  Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Dkt. 170, at 4 (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984)).  Congress delegated broad authority to the Sentencing Commission to describe "extraordinary and compelling reasons" for sentence reduction and limited that authority only in one regard by expressly stating that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t).  Because nothing in § 994(t) limits the

Sentencing Commission's authority to describe the circumstances set forth in USSG § 1B1.13(b)(6) as an extraordinary and compelling reason to reduce a previously imposed sentence, subsection (b)(6) is not an arbitrary or capricious exercise of the Sentencing Commission's delegated authority.

Nor is subsection (b)(6) "manifestly contrary" to the text or purpose of § 3582(c)(1)(A). The text of that statute is broad and, as just discussed, Congress tasked the Sentencing Commission with describing the "extraordinary and compelling reasons" that would support sentence reduction. And, as the Sentencing Commission stated in its official commentary to Amendment 814, "[o]ne of the expressed purposes of section 3582(c)(1)(A) when it was enacted in 1984 was to provide a narrow avenue for judicial relief from unusually long sentences." USSG Supplement to App. C (Nov. 1, 2023), at 208 (citing S. REP. NO. 98-225 (1983)). Nonetheless, the Government argues that "§ 3582(c)(1)(A)'s statutory scheme confirms that the phrase 'extraordinary and compelling reasons' does not encompass changes in law." Dkt. 165, at 6. The Government reasons that "Congress expressly addressed the retroactive application of some changes in law" in § 3582(c)(2)[6] and adopts the position of the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") that "[t]here would have been no reason for 'the same Congress, skeptical of sentence modifications as a general rule,' to have 'provide[d] for the retroactive application of specific changes in sentencing law in § 3582(c)(2)' had § 3582(c)(1)(A) 'already covered all legal

---

[6] 18 U.S.C. § 3582(c)(1)(B) provides:

in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

developments, retroactive or not.'" *Id.* (quoting *United States v. McCall*, 56 F.4th 1048, 1056 (6th Cir. 2022) (en banc)). The fatal flaw in this argument rests on the Government's acknowledgement that "[t]he Tenth Circuit has determined that changes in the law can qualify as extraordinary and compelling reasons in some circumstances." Dkt. 165, at 6 (citing *United States v. McGee*, 992 F.3d 1035, 1047-48 (10th Cir. 2021)).

Critically, when the Sentencing Commission amended USSG § 1B1.13 to add subsection (b)(6), the Sentencing Commission also added subsection (c) which provides, in full:

> LIMITATIONS ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

USSG § 1B1.13(c) (Nov. 1, 2023). The official commentary to Amendment 814 explains that "[s]ubsections (b)(6) and (c) operate together to respond to a circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A)." USSG Supplement to App. C (Nov. 1, 2023), at 210. The Sentencing Commission identified the Tenth Circuit's decision in *McGee* and the Sixth Circuit's decision in *McCall* as falling on opposite sides of that circuit split. *Id.* More importantly, the Sentencing Commission resolved that split by "agree[ing] with the circuits that authorize a district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction but adopt[ing] a tailored approach that narrowly

13

limits that principle in multiple ways" as described in subsection (b)(6).[7] *Id.* In other words, the Sentencing Commission rejected *McCall*'s view that non-retroactive changes in law are not permissible considerations under § 3582(c)(1)(A)(i); agreed with *McGee*'s holding that non-retroactive changes in law may be considered on a case-by-case basis; and provided that a non-retroactive change in law, standing alone, can serve as an extraordinary and compelling reason for sentence reduction only in the narrow circumstances described in USSG § 1B1.13(b)(6). *See* USSG Supplement to App. C (Nov. 1, 2023), at 209 ("Whereas subsection (b)(6) narrowly limits the circumstances in which a non-retroactive change in the law can constitute an extraordinary and compelling reason that itself can warrant a reduction in sentence, subsection (c) of the amended policy statement governs the use of changes in the law in cases where a defendant 'otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction.'"). Bound by Tenth Circuit precedent and persuaded by the Sentencing Commission's official commentary to Amendment 814, the Court rejects the Government's argument that USSG § 1B1.13(b)(6) is invalid.

With that issue resolved, the Court agrees with Brooks that his circumstances fall neatly within subsection (b)(6): he received an unusually long sentence, he has served more than fifteen years of that sentence, and the FSA's amendment eliminating § 924(c) sentence-stacking produced a gross disparity between the length of his 300-month sentence and the eighty-four month sentence

---

[7] The Sentencing Commission noted that it had considered whether the circuit split on this issue might be better resolved by the Supreme Court but determined that resolution by the Sentencing Commission was appropriate and explained that its determination "was influenced by the fact that on several occasions the Department of Justice successfully opposed Supreme Court review of the issue on the ground that it should be addressed first by the Commission." *Id.* (citing briefs filed by the Government opposing certiorari review of the issue).

that likely would be imposed for the same conviction when he filed the instant motion. The Court therefore finds that a sentence reduction is consistent with USSG § 1B1.13(b)(6).

Further, when the Court factors in Brooks's relative youth at the time of his offense conduct, the Court finds that a sentence reduction is consistent with USSG § 1B1.13(c). The Sentencing Commission's official commentary provides an apt example of when subsection (c) applies:

> [A] defendant's motion may present the following circumstances: (a) commendable rehabilitation while incarcerated; (b) the offense conduct occurred when the defendant was in his late teens or early twenties; and (c) pursuant to intervening legislation or intervening Guidelines amendments, the sentence likely to be imposed at the time of the motion would be lower than the sentence being served, but not grossly so. In those circumstances, the change in law could not properly be considered an extraordinary and compelling reason warranting a reduction in sentence. However, if the court determines that the combination of the other two factors constitutes an extraordinary and compelling reason, the change in law is among the broad array of factors that may properly be considered in determining the extent of any such reduction.

*Id.* Thus, consistent with *Maumau* and *McGee*, subsection (c) permits district courts to consider a combination of factors, including an intervening, non-retroactive change in the law, in determining whether to reduce a defendant's sentence even if the defendant has not shown, as Brooks has here, that his circumstances fall within subsection (b)(6). Here, even if the Court were not convinced that the FSA produced a gross disparity between the sentence imposed for Brooks's second § 924(c) conviction and the sentence likely to be imposed now for that conviction, the Court would still consider the FSA's elimination of § 924(c) sentence-stacking, in combination with his relative youth when he committed his crimes and, as discussed next, his rehabilitative efforts, as a combination of factors that support Brooks's request for a reduced sentence. And the Court's consideration of those factors, holistically, is consistent with USSG § 1B1.13(c).

Based on the foregoing, the Court finds that reducing Brooks's sentence is consistent with the applicable policy statement issued by the Sentencing Commission.

**D.     Consideration of 18 U.S.C. § 3553(a) factors**

Lastly, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, before it may grant Brooks's request for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *Maumau*, 993 F.3d at 831. Those factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . [and] to protect the public from further crimes of the defendant"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). "[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors." *Pepper v. United States*, 562 U.S. 476, 491 (2011). "Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id.* A defendant's "postsentencing conduct also sheds light on the likelihood that he will engage in future criminal conduct, a central factor that district courts must assess when imposing sentence." *Id.* at 492.

Brooks argues that the nature, circumstances, and seriousness of his offenses warrant a significant sentence reduction because the armed robberies "did not involve acts of violence or terrorism," no clerks suffered physical injuries, no shots were fired, and he was adequately punished for each robbery when the Court imposed a 51-month prison sentence for each robbery conviction. Dkt. 159, at 11. He further argues that he received a "substantial sentence" for his first § 924(c) conviction and a greater than necessary sentence for the second § 924(c) conviction, particularly given that it was McCombs who brandished the gun during both robberies. *Id.* at 11-12. Brooks also contends his history and characteristics weigh in favor of sentence reduction and

16

recounts several facts from the PSR, including the death of his father shortly before he committed the armed robberies, his abuse of controlled substances, and a criminal history that primarily involves minor misdemeanors attributable to his personal use of marijuana. *Id.* at 12-13.[8]

Finally, Brooks cites his rehabilitative efforts over the last fifteen years. Dkt. 159, at 14-15. But as Brooks acknowledges, his postsentencing rehabilitation presents "a mixed picture." Dkt. 159, at 20. Since 2011, Brooks has taken over one hundred course offerings while incarcerated, including courses focusing on parenting skills, life skills, and anger management. Dkts. 159-2, 159-3, 159-4. Brooks's coursework is commendable. But Brooks's discipline record reflects a long history of infractions that include relatively minor infractions based on Brooks's failure to comply with orders, more serious infractions for possessing intoxicants and dangerous weapons, and even more serious infractions based on assaults that Brooks committed in 2009 (two assaults without serious injury), 2010 (one assault without serious injury), 2011 (two assaults without serious injury), 2012 (one assault without serious injury), 2013 (one assault with serious injury), 2015 (one assault without serious injury), and 2020 (one assault with serious injury and possession of a dangerous weapon). Dkt. 159-6. To be fair, Brooks submitted evidence showing that, as of October 12, 2022, Brooks had no disciplinary violations reported for six months. Dkt. 159-5. And it appears that Brooks has accepted some level of responsibility for his crimes. *See*

---

[8] Brooks also notes that, effective November 1, 2023, the Sentencing Commission amended USSG § 4A1.1(d) to eliminate "status points" for offenders with fewer than seven criminal history points. *Id.* at 13; *see* USSG Supplement to App. C (Nov. 1, 2023), at 241. But that amendment does not change Brooks's guideline calculation. As previously discussed, Brooks prior convictions resulted in four criminal history points and two "status points" were added under USSG § 4A1.1(d) because he was under a criminal justice sentence when he committed the armed robberies. PSR at ¶ 56. This resulted in a Criminal History Category of III. *Id.* at ¶ 57. If sentenced today, without the two status points, Brooks would still have a Criminal History Category of III because four criminal history points also result in a Criminal History Category of III. USSG Ch. 5, Pt. A (Nov. 1, 2023) (Sentencing Table).

Dkt. 159, at 17 (citing statement from Brooks's letter to the Court acknowledging that he "put [him]self in prison.").

On consideration of the circumstances of this case and the relevant § 3553(a) factors, the Court is not persuaded by the Government's argument that the Court should deny Brook's motion because his "disciplinary history and high recidivism risk weigh heavily against reducing his sentence." Dkt. 165, at 9. But the Court also is not persuaded by Brooks's argument that the Court should reduce his total sentence to 219 months. Dkt. 159, at 22. True, a sentence of 219 months would rectify the disparity between the sentence he received for the second § 924(c) conviction and the sentence that likely would be imposed today for the same conduct. And, as Brooks states, a sentence of 219 months would reduce the disparity between his sentence and the sentence McCombs received for virtually the same conduct. Dkt. 159, at 21. But, as *Peppers* suggests, postsentencing rehabilitation is highly relevant to this Court's consideration of the factors set forth in § 3553(a) and "sheds light on the likelihood that he will engage in future criminal conduct." 562 U.S. at 492. And Brooks is correct that his extensive record of disciplinary misconduct, particularly the assault with serious injury and possession of a dangerous weapon he committed within the last four years, does "give this Court pause." Dkt. 159, at 18. The Court therefore finds and concludes that reducing Brooks's count four sentence from 300 months to 180 months, resulting in a total sentence of 315 months, will maintain a sentence that is "sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a).

## IV. Conclusion

Considering Brooks's conviction at a relatively young age, the unusual length of his sentence, and the gross disparity between the sentence imposed for his second § 924(c) conviction and the sentence he likely would receive today if convicted of the same conduct, the Court finds extraordinary and compelling reasons to grant Brooks's motion for reduction of sentence and to

reduce the sentence imposed as to count four from 300 months to 180 months, thereby reducing his total sentence from 435 months to 315 months. The sentences originally imposed as to counts one, two, three, and five remain unchanged. The previously imposed fine, terms of supervised release, and conditions of supervision also remain unchanged.[9]

**IT IS THEREFORE ORDERED** that Brooks's motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) filed October 30, 2023 (Dkt. 159) is **granted**. Brooks's sentence as to count four is hereby reduced from 300 months to 180 months and his total sentence is hereby reduced to 315 months.

**IT IS SO ORDERED** this 20th day of February 2024.

_____
TERENCE C. KERN
United States District Judge

---

[9] Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment.